UNITED STATES DISRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

ZACHARY R. BAISDEN, et al.,

    Plaintiffs,

v.

CREDIT ADJUSTMENTS, INC.,

    Defendant.

Case No.: 2:13-cv-992
JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Elizabeth Preston Deavers

## OPINION AND ORDER

This matter is before the Court on Defendant's Motion for Summary Judgment (ECF No. 19), Plaintiffs' Memorandum in Opposition to Defendant's Motion (ECF No. 28), and Defendant's Reply in Support of its Motion for Summary Judgment (ECF No. 30). For the reasons that follow, the Court **GRANTS** Defendant's Motion.

### I.

On November 26, 2011, Plaintiff Zachary R. Baisden sought medical care at Mount Carmel West Hospital in Columbus Ohio. On August 3, 2009 and on August 26, 2011, Plaintiff Brenda L. Sissoko sought medical care at a Mount Carmel Surgical Facility in Columbus Ohio. At each of these hospital visits, Plaintiffs Baisden and Sissoko also received anesthesia services from Consultant Anesthesiologists, Inc. As part of their admission to the hospital in 2011, Plaintiffs signed a form titled "**PATIENT CONSENT AND AUTHORIZATION**." (Certificate of Med. Rec. Custodian, ECF Nos. 19-1 at 2–3; Resp. to Req. for Admissions, ECF No. 19-5 at 18–19.) That form provides in relevant part:

**2. Release of Information**

I understand Mount Carmel may use my health information for many reasons as needed:

- insurance information

- billing and payment

- discharge planning and other health care providers

- quality improvement reviews

- Medicare, Medicaid, and other government programs

- Bureau of Workers' Compensation

- my employer if I am injured on the job

- medical and nursing education programs

- public health reporting

- legal, regulatory, and accreditation agencies

Mount Carmel may receive or release my health information, whether written, verbal, fax, or electronic using secured internet web sites. . . . .

**3. Acknowledgement of Notice of Privacy Practices**

I have received or been offered a copy of Mount Carmel's Notice of Privacy Practices. I have had a chance to object to the use or release of my information to the hospital directory or to my family or persons involved in my care.

*By signing below, I certify that I have read and agree to the contents of this consent and authorization document. The consent for treatment is valid for one year from date of service.*

*Id.*

As part of her admission to the hospital in 2009, Plaintiff Sissoko signed a form titled "PATIENT CONSENT AND AUTHORIZATION" that provides in relevant part:

**2. RELEASE OF INFORMATION**

I understand that Mount Carmel may use my health information for a range of purposes including: Insurance/payment eligibility verification; billing and collecting moneys due from me, private and public payors or their agents including insurance companies managed care entities, employer, state and federal

2

> government programs and the Bureau of Workers' Compensation; obtaining pre-admission or continued length of stay certification; quality of care assessment and improvement activities; . . . . I authorize Mount Carmel to receive or release my health information, whether written, verbal, electronic including secured internet web sites, or by facsimile to such employees, agents or third parties as are necessary for these purposes and to companies who provide billing services for physicians or other providers involved in my medical care. . . .
>
> **3. ACKNOWLEDGEMENT OF NOTICE OF PRIVACY PRACTICES**
>
> I have received or been offered a copy of Mount Carmel's Notice of Privacy Practices. I have had a chance to object to the use or release of my information to the hospital directory or to my family or persons involved in my care.
>
> *By signing below, I certify thatI have read and agree to the contents of tis consent and authorization document.*

(Resp. to Req. for Admissions at 9, ECF No. 19-5.)

In their contact information provided to the hospital in connection with signing the Patient Consent and Authorization forms, both Plaintiffs provided their wireless telephone numbers. Consultant Anesthesiologists received Plaintiffs' contact information from Mount Carmel Hospital.

Consultant Anesthesiologists sent a billing statement for $850.00 to Plaintiff Baisden for the services it provided to him during his treatment at Mount Carmel Hospital. Consultant Anesthesiologists also sent billing statements to Plaintiff Sissoko for $273.42 and for $171.52 for the services it provided to her during her treatment at Mount Carmel Hospital. Plaintiffs did not pay Consultant Anesthesiologists, which sent several billing statements to each Plaintiff informing them that if they did not pay the outstanding balance their accounts would be transferred to an external collection agency. Neither Plaintiff responded to Consultant Anesthesiologists.

Consultant Anesthesiologists transferred Plaintiff Baisden's and Plaintiff Sissoko's accounts to Defendant Credit Adjustments, Inc. ("CAI or Defendant"). CAI is a debt collection

company headquartered in Defiance, Ohio. CAI attempted to collect from Baisden and Sissoko the debts they owed to Consultant Anesthesiologists by making multiple telephone calls to Sissoko and between thirty and forty calls to Baisden. Because Plaintiffs failed to pay their accounts, CAI filed complaints against them in the Franklin County Ohio Municipal Court in an attempt to collect the debt. CAI obtained an agreed judgment against Sissoko on September 7, 2011, in the sum of $541.19 plus interest at three percent and court costs. On March 8, 2013, CAI obtained a default judgment against Baisden in the sum of $850.00 plus interest at three percent and court costs.

On October 4, 2013, Plaintiffs, individually and on behalf of all others similarly situated, filed this action seeking declaratory relief, injunctive relief, and statutory damages against CAI for alleged violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA"), and the Federal Communication Commission ("FCC") regulations promulgated thereunder, 47 C.F.R. § 64.1200 *et seq.* Plaintiffs assert that CAI violated the TCPA and the regulations by making telephone calls to the cellular telephone numbers of Plaintiff Baisden, Plaintiff Sissoko, and others similarly situated using an "automatic telephone dialing system" as defined by 47 U.S.C. § 227(a)(1) and "an artificial or prerecorded voice" as described in 47 U.S.C. § 227(b)(1)(A) without their prior express consent. Plaintiffs define the putative class as follows:

> All persons whose cellular telephone number was called for a non-emergency debt collection purpose by Defendant Credit Adjustments, Inc. using an automatic telephone dialing system and/or an artificial or prerecorded (both as defined in the Telephone Consumer Protection Act) at any time commencing four years prior to the date of the filing of this action through the date of class certification in this action where the debt being collected was owed to Consultant Anesthesiologists, Inc. or was owed to Defendant Credit Adjustments, Inc. pursuant to an Ohio Rev. Code § 1319.12 assignment from Consultant Anesthesiologists, Inc.; but excluding Defendant CAI's agents and employees [and court employees] ("Class").

4

(Am. Compl. ¶ 59, ECF No. 15.)

On August 15, 2014, Defendant moved for summary judgment on all of Plaintiffs' claims. That motion is ripe for review.

## II.

Summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court may therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions" of the record which demonstrate "the absence of a genuine issue of material fact." *Id.* at 323. The burden then shifts to the nonmoving party who "'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)). "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255 (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. *See also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (the requirement that a dispute be "genuine" means that there must be more than "some metaphysical doubt as to the material facts"). Consequently, the central issue is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided

5

that one party must prevail as a matter of law.'" *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234-35 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251-52).

### III.

The TCPA makes it unlawful for a person to call the cellular telephone number of any other person using an automatic telephone dialing system or an artificial or prerecorded voice without the recipient's prior express consent. 47 U.S.C. § 227(b)(1)(A)(iii). Defendant contends that Plaintiffs Baisden and Sissoko provided prior express consent to be called on their cellular telephones in the Mount Carmel Hospital admission forms they completed when they incurred the debt owed to Consultant Anesthesiologists. A defendant bears the burden of proving prior express consent as an affirmative defense. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, Declaratory Ruling*, 23 F.C.C. Rcd. 559, 565 ¶ 10 (Jan. 4, 2008) ("we conclude that the creditor should be responsible for demonstrating that the consumer provided prior express consent"); *Van Patten v. Vertical Fitness Grp., LLC*, 22 F. Supp.3d 1069, 1073 (S.D. Cal. 2014).

Plaintiffs maintain that provision of their cellular telephone numbers on the hospital admission forms does not constitute prior express consent, a phrase that is not defined in the TCPA. They argue that Defendant's interpretation of the phrase "prior express consent" depends upon a "redrafting" the TCPA and/or reliance upon an inapplicable FCC ruling.

**A. The TCPA**

As to the alleged redrafting contention, Plaintiffs argue that the TCPA requires express consent to be called by an automatic telephone dialing system or an artificial or prerecorded voice, not just consent to telephone calls in general. Plaintiffs contend:

> "Express consent is '[c]onsent that is clearly and unmistakably stated.' Black's Law Dictionary 323 (8th ed. 2004)." *Satterfield v. Simon & Schuster, Inc.*, 569

6

> F.3d 946, 955 (9th Cir. 2009) (applying that definition to "express consent" as the term appears in the Telephone Consumer Protection Act).
>
> Yet [CAI] would have this Court believe that the phrase "express consent" appearing in a federal statute really means consent that it is not clearly and unmistakably stated, but merely inferred. This partisan erasure of "express" from a statute cannot be condoned, because it does violence to the cardinal canon that "courts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 253-254 (1992).

(Pls.' Mem. in Opp. at 1, ECF No. 28.)

Further, Plaintiffs rely upon the legislative purpose in drafting the TCPA, which was, at least in part, to limit automatic telephone dialing system calls or artificial or prerecorded voice calls because they "are a 'nuisance,' an 'invasion of privacy,' and 'when an emergency or medical assistance telephone line is seized, a risk to public safety.'" *Id.* at 6 (citing, *inter alia*, Pub.L. 102-243, § 2, ¶¶ 5-6, 9-10, 13-14, 105 Stat 2394 (1991)). Finally, Plaintiffs rely upon an FCC Report and Order regarding telemarketers that requires that "the seller must secure a written agreement between itself and the consumer showing that the consumer agrees to receive autodialed or prerecorded telemarketing calls from the seller." *Id.* at 7 (quoting *In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991, Report and Order*, 27 FCC Rcd. 1830, 1872 ¶ 24 (Feb. 15, 2012)). Plaintiffs assert that, "[alt]hough not effective until October 2013 and binding only on telemarketers, such an FCC Order is persuasive evidence that a consumer must consent to the use of the automated technology, not merely to being called." *Id.* (citation omitted).

A recent decision from this Court discussed this same issue and determined that FCC guidance counsels against Plaintiffs' proposed interpretation of the phrase "prior express consent." In *Hill v. Homeward Residential*, No. 2:13-cv-388, 2014 U.S. Dist. LEXIS 115106 (S.D. Ohio Aug. 19, 2014), this Court first explained that the TCPA mandates that the FCC

7

establish implementing regulations, and that the FCC has released rules and regulations relevant to the prior express consent issue. *See also Leyse v. Clear Channel Broad., Inc.*, 545 F. App'x 444, 453 (6th Cir. 2013) ("In sum, the [TCPA] is replete with evidence that Congress intended the FCC to promulgate rules carrying the force of law that determine what kinds of prerecorded calls are permissible and what kinds are not.") The Court reviewed a 1992 Report and Order, in which the FCC stated:

> [P]ersons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary. Hence, telemarketers will not violate our rules by calling a number which was provided as one at which the called party wishes to be reached. However, if a caller's number is "captured" by a Caller ID or an ANI device without notice to the residential telephone subscriber, the caller cannot be considered to have given an invitation or permission to receive autodialer or prerecorded voice message calls. Therefore, calls may be placed to "captured" numbers only if such calls fall under the existing exemptions to the restrictions on autodialer and prerecorded message calls.

*In the Matter of Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991, Report and Order*, 7 FCC Rcd. 8752, 8769 ¶ 31 (Oct. 16, 1992).

The Court next looked to the 2008 Declaratory Ruling in which the FCC explains that, "[i]n this ruling, we clarify that autodialed and prerecorded message calls to wireless numbers that are provided by the called party to a creditor in connection with an existing debt are permissible as calls made with the 'prior express consent' of the called party." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Declaratory Ruling*, 23 FCC Rcd. 559, 559 ¶ 1 (Jan. 4, 2008). In that Declaratory Ruling the FCC further explained:

> Although the TCPA generally prohibits autodialed calls to wireless phones, it also provides an exception for autodialed and prerecorded message calls for emergency purposes or made with the prior express consent of the called party. Because we find that autodialed and prerecorded message calls to wireless numbers provided by the called party in connection with an existing debt are

8

> made with the "prior express consent" of the called party, we clarify that such calls are permissible. We conclude that the provision of a cell phone number to a creditor, *e.g.*, as part of a credit application, reasonably evidences prior express consent by the cell phone subscriber to be contacted at that number regarding the debt. In the 1992 TCPA Order, the Commission determined that "persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary." The legislative history in the TCPA provides support for this interpretation. Specifically, the House report on what ultimately became section 227 states that:
>
>> [t]he restriction on calls to emergency lines, pagers, and the like does not apply when the called party has provided the telephone number of such a line to the caller for use in normal business communications.

*Id.* at 564 ¶ 9 (footnotes omitted).

> The *Hill v. Homeward Residential* Court then concluded:
>
> "The thrust of the FCC's Rulings is that a person need not specifically consent to be contacted using an autodialer or artificial or prerecorded voice. Rather, a person who knowingly provides his telephone number to a creditor in connection with a debt is agreeing to allow the creditor to contact him regarding his debt, regardless of the means."

2014 U.S. Dist. LEXIS 115106, at *13 (quoting *Ranwick v. Texas Gila, LLC*, No. 13-2792 (RHK/SER), 2014 U.S. Dist. LEXIS 108924, 2014 WL 3891663, at *4 (D. Minn. Aug. 7, 2014); and citing *Gray v. Morgan Drexen, Inc.*, No. 2:13-cv-83-FtM-29DNF, 2014 U.S. Dist. LEXIS 78079, 2014 WL 2573227, at *3 (M.D. Fla. June 9, 2014) (explaining that the requisite consent targets the provision of a number at which a party could be reached and not consent to use an automatic telephone dialing system to effectuate that contact) and *Reed v. Morgan Drexen, Inc.*, No. 13-61440-CIV, 2014 U.S. Dist. LEXIS 83057, 2014 WL 2616906, at *7 (S.D. Fla. Apr. 4, 2014) (rejecting proposition that a party's consent must be to receiving autodialed, as opposed to manual, calls)).

In accordance with this reasoning, this Court finds Plaintiffs' argument regarding Defendant's redrafting of the TCPA not well taken. Neither Consultant Anesthesiologists nor CAI as Consultant's debt collector were required to obtain permission from Plaintiffs to call their cellular telephone numbers by autodialed or prerecorded calls in an attempt to collect on their accounts. Autodialed and prerecorded message calls to wireless numbers provided by the called party in connection with an existing debt are made with the "prior express consent" of the called party.

## B. FCC's Implementing Regulations

Plaintiffs next argue that even though the FCC's implementing regulations are binding, (1) they do not apply under the facts of this case and/or (2) the Patient Consent and Authorization forms completed by Plaintiffs do not provide for their cellular telephone numbers to be transferred to Consultant Anesthesiologists.

### 1. 2008 FCC Declaratory Ruling

Plaintiffs contend that the FCC's 2008 Declaratory Ruling is subject to two important limitations that prohibit it from being applied in this case. First, Plaintiffs argue that they only gave their wireless telephone numbers to Mount Carmel Hospital while filling out their admission consent forms, but that they did not provide their telephone number directly to their creditor, Consultant Anesthesiologists "(and hence to CAI as Consultant's debt collector)." (Pls.' Mem. in Opp. at 9, 13.) Plaintiffs assert that this is fatal to CAI's defense because "prior express consent is deemed to be granted only if the wireless number was provided by the consumer to the creditor." *Id.* at 9 (quoting 2008 Declaratory Ruling, 23 F.C.C. Red. 559, 564). And, Plaintiffs continue, "'[p]rior express consent provided to a particular creditor will not entitle that creditor (or third party collector) to call a consumer's wireless number on behalf of

other creditors, including on behalf of affiliated entities.'" *Id.* at 10 (quoting *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, Declaratory Ruling*, 23 F.C.C. Rcd. 559, n.38). Second, Plaintiffs maintain that for this same reason, *i.e.*, that they provided their cellular numbers only to Mount Carmel Hospital, the numbers were not "provided during the transaction that resulted in the debt owed" as required by the 2008 Declaratory Ruling. Plaintiffs rely upon, *inter alia*, *Mais v. Gulf Coast Collection Bureau, Inc.*, 944 F. Supp.2d 1226 (S.D. Fla. 2013), which is directly on point.

In that case, the plaintiff Mark Mais sought treatment at the Westside Regional Hospital in Broward County, Florida. Once admitted to the hospital, he received radiology services from Florida United Radiology, L.C. ("Florida United"), a hospital-based provider. Mais incurred a medical debt of $49.03 to Florida United. McKesson Practice Services ("McKesson"), a billing company serving as Florida United's agent, electronically retrieved Mais's telephone number and demographic information from the hospital and billed Mais. When Mais did not pay or dispute the debt, McKesson forwarded his account to Gulf Coast for collection. Gulf Coast is a debt collector that uses a predictive dialer, which falls within the TCPA's definition of an automatic telephone dialing system. Gulf Coast called Mais's cellular telephone about the debt with its predictive dialer between fifteen and thirty times and left four messages.

Mais filed a class action against Gulf Coast, Florida United and its parent alleging the same claims for relief under the TCPA as Plaintiffs allege in the instant action. The district court granted Mais's request for summary judgment on the "prior express consent" defense mounted by the defendants for two reasons, the first of which is not relevant here. In the second, or alternative, reason, however, the district court ruled on the exact argument Plaintiffs make in the case *sub judice*. That is, the district court found that, even if the FCC's interpretation of the

11

meaning of "prior express consent" found in the 2008 FCC Declaratory Ruling was valid and binding, the rule would not apply under the facts of that case because Mais's wife gave his cellular telephone number only to the Hospital and not to the creditor, Florida United.

The Eleventh Circuit reversed the district court, addressing both reasons it gave for granting the plaintiff summary judgment on the prior express consent issue. *Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F.3d 1110 (11th Cir. 2014). As to the relevant issue here, the court found that it was "obliged to address the alternate holding of the [district court], that is, whether the facts and circumstances of th[e] case somehow fall outside the scope of the 2008 FCC Ruling." The court considered this proposition:

> Mais also suggests that the 2008 FCC Ruling does not affect his claim because he did not "provide" his number to "the creditor"—neither he nor his wife personally transferred his cell phone number to Florida United or its collection agent, Gulf Coast. After all, his wife submitted the admissions forms and the cell phone number to a representative of the Hospital, an entity separate from Florida United and Gulf Coast, and the 2008 FCC Ruling "emphasize[d] that prior express consent is deemed to be granted only if the wireless number was provided by the consumer *to the creditor,* and that such number was provided during the transaction that resulted in the debt owed." 23 FCC Rcd. at 564–65 (emphasis added).

*Mais*, 768 F.3d at 1122–23.

The Eleventh Circuit rejected Mais's assertion, referring to it as a "narrow reading of the 2008 FCC Ruling" and found "no sign that the FCC thought a cell phone number could be 'provided to the creditor' only through direct delivery. . . . [but instead] the contrary, the 2008 FCC Ruling indicated that prior express consent existed when a cell phone subscriber 'made the number available to the creditor regarding the debt.'" *Id.* at 1123. The court concluded that "[p]lainly, Mais's wife made his number available to Florida United by granting the Hospital permission to disclose it in connection with billing and payment." *Id.* By this same reasoning, Plaintiffs Baisden and Sissoko made their cellular telephone numbers available to Consultant

12

Anesthesiologists by granting Mount Carmel Hospital permission to disclose them for "many reasons" or a "variety of purposes," including to "other health care providers," "other providers involved in [their] medical care," "or persons involved in [their] care," for "billing and payment" or "billing and collecting moneys due from [them]." (Certificate of Med. Rec. Custodian, ECF Nos. 19-1 at 2–3; Resp. to Req. for Admissions, ECF No. 19-5 at 18–19.)

The *Mais* appellate court additionally relied upon a 2014 FCC Order, which provides "that the TCPA does not prohibit a caller from obtaining consent through an intermediary." *In re GroupMe, Inc./Skype Commc'ns S.A.R.L. Petition*, 29 FCC Rcd. 3442, 3447 (March 27, 2014). In the 2014 Order, the FCC referred to its 2008 Declaratory Ruling which found that "allowing consent to be obtained and conveyed via intermediaries in this context facilitates these normal, expected, and desired business communications in a manner that preserves the intended protections of the TCPA." *Id.* at 3445. Of particular note here, the FCC said that, though the 2008 FCC Ruling "did not formally address the legal question of whether consent can be obtained and conveyed via an intermediary," the earlier order "did make clear that consent to be called at a number in conjunction with a transaction extends to a wide range of calls 'regarding' that transaction, even in at least some cases where the calls were made by a third party." *Id.* at 3446. The FCC's recognition of "consent obtained and conveyed by an intermediary," *id.*, "strongly supports" the Eleventh Circuit's conclusion that "Mais's wife 'provided' the cell phone number to the creditor through the Hospital." *Mais*, 768 F.3d at 1123. Similarly, it supports this Court's conclusion that Plaintiffs Baisden and Sissoko provided their cellular telephone numbers to Consultant Anesthesiologists through Mount Carmel Hospital.

Thus, under the 2008 FCC Declaratory Ruling, wireless telephone services subscribers such as Plaintiffs Baisden and Sissoko could provide their number to a creditor like Consultant

13

Anesthesiologists, and grant prior express consent to receive autodialed or prerecorded calls, by affirmatively giving an intermediary like Mount Carmel Hospital permission to transfer the number to Consultant Anesthesiologists for use in billing. *Mais*, 768 F.3d at 1123–24 2014) ("Thus, under the 2008 FCC Ruling a cell phone subscriber like Mais could provide his number to a creditor like Florida United—and grant prior express consent to receive autodialed or prerecorded calls—by affirmatively giving an intermediary like the Hospital permission to transfer the number to Florida United for use in billing."). Plaintiffs here gave Mount Carmel Hospital just such permission, *i.e.*, to provide their contact information to "other health care providers," "other providers involved in [their] medical care," "or persons involved in [their] care," for "billing and payment" or "billing and collecting moneys due from [them]." (Certificate of Med. Rec. Custodian, ECF Nos. 19-1 at 2–3; Resp. to Req. for Admissions, ECF No. 19-5 at 18–19.)

### 2. Patient Consent and Authorization Forms

Plaintiffs' final argument is that, even if the FCC's 2008 Declaratory Ruling applies, the Patient Consent and Authorization forms they completed upon admission to Mount Carmel Hospital do not provide for their cellular telephone numbers to be transferred to Consultant Anesthesiologists. Relying on dictionary definitions and contract interpretation principles, Plaintiffs contend that giving permission to provide their "health information" to be transferred does not translate into permission for their cellular telephone numbers to be transferred. Again, the plaintiff in *Mais* made this same argument, which the Eleventh Circuit soundly rejected:

> Mais finally argues that the term "health information" as used in the Hospital admissions forms does not include his cell phone number. We disagree.

*Mais*, 768 F.3d at 1125. The court explained that "[t]he cell phone number listed by Mais's wife on the Hospital admission form was part of the record from his visit and was contact information

related to billing." *Id.* Further, the court relied upon the statutory definitions found in the Health Insurance Portability and Accountability Act ("HIPAA"), Pub.L. No. 104–191, 110 Stat.1936 (1996), which support its interpretation. *Id.* HIPAA defines "health information" to include "any information . . . created or received by a health care provider" that "relates to . . . the past, present, or future payment for the provision of health care to an individual." 42 U.S.C. § 1320d(4). As did the *Mais* court, this Court finds that the hospital's registration forms, in which it received Plaintiffs' wireless numbers, constitute information related to future payment, and therefore, part of Plaintiffs' health information. *See id.* ("As reflected on a Registration Form, the Hospital received Mais's wireless number, a piece of information related to future payment.").

Last, Plaintiffs argue that, "under th[e] same analysis" they utilized with regard to the definition of health information, "'billing and payment' does not mean 'collecting' . . . . 'billing services' does not mean 'collecting services' and 'other health care providers' does not mean Consultant'" Anesthesiologists. (Pls.' Mem. in Opp. at 15–19, ECF No. 28.) Plaintiffs' arguments are not well taken.

Consultant Anesthesiologists is easily considered one of the "other health care providers" that served Plaintiffs at Mount Carmel Hospital, and its attempts to be paid for its services certainly constitutes "billing and payment." It is undisputed that Consultant Anesthesiologists provided medical services to Plaintiffs during their hospitalization at Mount Carmel, for which Plaintiffs failed to pay. Therefore, considering the content of the hospital admission forms, the Court finds that Plaintiffs agreed to have their health information, including their cellular telephone numbers, provided to Consultant Anesthesiologists so that it could, *inter alia*, bill them for its services and attempt to collect payment for those same services.

15

## IV.

For the reasons set forth above, the Court **GRANTS** Defendant's Motion for Summary Judgment. (ECF No. 19.) The Clerk is **DIRECTED** to **ENTER JUDGMENT** in favor of Defendant.

**IT IS SO ORDERED.**

 3-10-2015
**DATE**

EDMUND A. SARGUS, JR.
CHIEF UNITED STATES DISTRICT JUDGE